IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | |
| | **)** | |
| Pegrum Creek, LLC, | **)** | CASE NO. 24-81037-CRJ11 |
| EIN: XX-XXX6194 | **)** | CHAPTER 11 |
| | **)** | |
| Debtor. | **)** | |

## DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT ACCOMPANYING PLAN OF LIQUIDATION DATED DECEMBER 16, 2025

**I.  INTRODUCTION**

This is a Disclosure Statement (the "Disclosure Statement") filed by Chapter 11 Debtor Pegrum Creek, LLC ("Pegrum" or the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan filed by Debtor on December 16, 2025. A full copy of the Plan is being filed contemporaneously with this Disclosure Statement. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The purpose of this Disclosure Statement is to provide to holders of claims against the Debtor's estate adequate information about the Debtor and the Debtor's Plan of Liquidation (hereinafter the "Plan") to enable such holders to make an informed judgment relative to the merits and approval of the Plan. The Court has entered an order requiring the Debtor to transmit to all creditors and parties in interest a copy of the Disclosure Statement along with the Plan, an approved ballot, and a copy of the order.

NO REPRESENTATIONS CONCERNING THE DEBTOR, INCLUDING REPRESENTATIONS AS TO FUTURE INCOME OR THE VALUE OF ITS PROPERTY, ARE AUTHORIZED OTHER THAN THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO ANY CREDITOR TO SECURE ITS ACCEPTANCE OF THE PLAN, OTHER THAN REPRESENTATIONS OR INDUCEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION CONCERNING THE PLAN; AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

The information contained in this Disclosure Statement has been derived from sources that the Debtor believes to be reliable, including records that were maintained by the Debtor. This information has not been independently verified nor subjected to an audit. Every reasonable effort has been made to present accurate information. However, due to the

complexity of the Debtor's business affairs, the accuracy of the information contained herein cannot be guaranteed. Certain of the materials contained in this Disclosure Statement are taken from other, readily accessible documents that are on file with the Court, or can be made available upon request. While the Debtor has made every effort to retain the meaning of such other documents or the portions thereof, it urges that any reliance on the contents of such other instruments should depend upon a thorough review of the documents themselves.

The proposed distributions under the Plan are discussed in this Disclosure Statement. You should carefully review the proposed distributions and discuss them with your attorney.

### A. Purpose of This Document

This Disclosure Statement describes:

1.  The Debtor and significant events during the bankruptcy case.

2.  The extent of the Debtor's assets and liabilities.

3.  How the Plan proposes to treat claims or equity interests of the type you hold.

4.  What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan.

5.  Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.  *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan.*

    The Hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on December 17, 2025, at 11:00 a.m., Central Prevailing Time, in the United States Courthouse, Courtroom I, 660 Gallatin St. SW, Huntsville, Alabama.

Case 24-81037-CRJ11    Doc 324    Filed 12/16/25    Entered 12/16/25 11:03:40    Desc
Main Document    Page 2 of 18

2. *Deadline for Voting to Accept or Reject the Plan.*

   If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Stuart M. Maples, Thompson Burton PLLC, Regions Center, 200 Clinton Avenue West, Suite 1000, Huntsville, AL 35801.

   Your ballot must be received by January 5, 2026, at 4:00 p.m. Central Prevailing Time in Huntsville, Alabama, or it will not be counted.

3. *Deadline* for Objecting to the Adequacy of Disclosure Objections to this Disclosure Statement must be filed with the Court and served upon Stuart M. Maples, Thompson Burton PLLC, Regions Center, 200 Clinton Avenue West, Suite 1000, Huntsville, AL 35801 by _____, 2025, at 4:00 p.m. CST.

4. *Deadline for Objecting to the Confirmation of the Plan.*

   Objections to the Plan must be filed with the Court and served upon Stuart M. Maples, Thompson Burton PLLC, Regions Center, 200 Clinton Avenue West, Suite 1000, Huntsville, AL 35801 by January 5, 2025, at 4:00 p.m. CST.

5. *Identity of Person to Contact for More Information.*

   If you want additional information about the Plan, you should contact Stuart M. Maples, Thompson Burton PLLC, Regions Center, 200 Clinton Avenue West, Suite 1000, Huntsville, AL 35801, email smaples@thompsonburton.com or call (256) 489-9752

**C.**      **Disclaimer**

***The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

**II.**      **BACKGROUND**

**A.**      **Description and History of the Debtor's Businesses**

Pegrum Creek is an Alabama limited liability company formed on January 10, 2018 and is owned and managed by William E. Taylor, Jr. Pegrum Creek is engaged in many scopes of owning, holding, developing, renting, leasing, managing, improving, buying, farming, and selling real property for agricultural, residential, and commercial purposes. Any proceeds generated from any such activities, along

3

with the liquidation of any other property or claims, will be utilized, in part, to fund the Plan. Should any assets remain after the liquidation of the estate, Pegrum Creek will continue to be owned and managed by William E. Taylor, Jr., upon confirmation.

## III. SUMMARY OF ASSETS

### A. Real Property

The Debtor currently owns the following parcels of real property, valued by the Debtor as follows:

| Property Address | Owner | Value of Debtor's Interest |
|---|---|---|
| 0 Narrow Lane (105.50 acres) New Market, AL PIN: 70221 | Pegrum | UNDER CONTRACT (*See* footnote 1)[1] $6,500,000.00 |
| 0 Joe Quick Road (77 acres) Hazel Green, AL 35750 PIN: 69972 | Pegrum | $1,969,500.00 |
| 1375 Walker Lane (96 acres) New Market, AL PIN: 45599 | Pegrum | UNDER CONTRACT (*See* footnote 1) |
| 1966 Walker Lane (5 acres) Hazel Green, AL PIN: 153663 | Pegrum | SOLD $420,000.00 |
| 0 Billy D. Harbin Road (0.90 acres) PIN: 158901 | Pegrum | $50,000.00 |
| 0 Billy D. Harbin Road (1.2 acres) PIN: 158900 | Pegrum | $55,000.00 |
| 0 Billy D. Harbin Road (52 acres) PIN: 158861 | Pegrum | 442,000.00 |
| 1269 Walker Lane (41 acres) New Market, AL 35761 PIN: 7072 | Pegrum | 1,025,000.00 |
| 12765 Hwy 231-431 N. (0.46 acres) Huntsville, AL | Pegrum | SOLD $375,000.00 |
| 131 Tanner Road (0.40 aces) New Market, AL 35761 PIN: 124075 | Pegrum | SOLD $150,000.00 |
| 1550 Joe Quick Road (11 acres) Hazel Green, AL | Pegrum | SOLD $411,400.00 |

[1] Under contract with Northaven and awaiting Court approval. Properties include (1) Narrow Lane (PIN: 70221); (2) 0 Walker Lane (PIN: 131925); and (3) 1375 Walker Lane (PIN: 45599)

4

| | | |
|---|---|---|
| 396 Billy D. Harbin Road (28 acres) New Market, AL 35761 | Pegrum | $375,000.00 |
| 703 Rock Rd. Street SE (0.20 acres) Hartselle, AL Parcel No. 15 01 11 3 006 013.000 | Pegrum | STAY LIFTED FOR FORECLOSURE |
| 19627 S. La Grange Rd. Mokena, IL. 60448 | Pegrum | STAY LIFTED FOR FORECLOSURE |
| 109 West Main Street Chillichothe, OH 45601 | Pegrum | STAY LIFTED FOR FORECLOSURE |
| 0 Walker Lane (36 acres) New Market, AL PIN: 131925 | Pegrum | UNDER CONTRACT (*See* footnote 1) |
| 2000 Bobo Section Road (0.40 acres) PIN: 498 | Pegrum | $65,100.00 |
| 0 Henry Taylor Road (3.54 acres) New Market, AL 35761 PIN: 143874 | Pegrum | SOLD[2] (*See* footnote 2) $375,000.00 |
| 0 Henry Taylor Road (16 acres) New Market, AL 35761 PIN: 70198 | Pegrum | SOLD (*See* footnote 2) |
| 0 Henry Taylor Road (7.32 acres) New Market, AL 35761 PIN: 148817 | Pegrum | SOLD (*See* footnote 2) |

The total value of these properties, according to the Debtor's valuation, is $12,213,000.00. The Debtor has not performed a formal appraisal on the properties. However, based upon prior sales of the Debtor's Real Estate Assets, its knowledge of the Real Estate Assets and Personal Property Assets, and the information provided by its real estate professionals, the Debtor believes that these valuations are accurate.

**B.      Bank Accounts**

As of the Petition Date, the Debtor had $273.18 its checking account.  As of September 30, 2025, the Debtor had $51,263.07 in its DIP Account.  As of September 30, 2025, Debtor held deposits of $97,724.49 in the trust account for Debtor's counsel.  Those trust funds were earned from approved sales of Real Estate Assets and estate property post-petition, and are property of the estate.

**C.      Real Property**

As of the Petition Date, the Debtor's real property is valued cumulatively at $6,285,626 but is subject to liens.  This value came from real estate tax records.

---

[2] 0 Henry Taylor (PINs: 148817, 143874, 70198) contiguous parcels, closed together.

**D.     Post-Petition Earnings**

The Debtor's post-petition earnings are property of the estate.  As evidenced by the operating statements filed with the Court, the Debtor has operated post-petition with a profit.  The most recent monthly operating reports, for month ending September 30, 2025, showed a total net income post-petition to date for the Debtor of $66,249.07.  This income was for farming operations and lease of farmland.

**IV.     SUMMARY OF LIABILITIES**

**A.     Administrative Debt**

**a.     Thompson Burton, PLLC**

Legal fees arising post-petition by counsel, estimated to be approximately $90,870.82 to date.  This amount is expected to increase prior to Plan confirmation.  It is anticipated that this will be paid in full prior to confirmation of the Plan.

**B.     Secured Debt**

As of the Petition Date, Debtor contends the total secured claims is $14,255,422.37 in accordance with Schedule D.  However, the actual value of such Allowed Secured Claims will not exceed the value of the collateral securing the claim.  The balance of any claim in excess of value of secured collateral will be treated as an unsecured claim, subject to objection.  The Debtor disputes certain of these secured claims and reserves the right to object to any secured claims filed by these creditors. All Allowed Secured Claims will be paid, according to the priority of liens, from the sale of Real Estate Assets. Other related individuals or entities also owe some of these claims jointly and severally.

To the extent an Allowed Secured Claimant is not paid in full from the liquidation of its collateral in this case as well as other secured property not owned by this Debtor, said claimant shall be entitled to an Allowed General Unsecured Claim, which will be paid with other General Unsecured Claims.  It is anticipated by the Debtor that all Allowed Secured Claims will be paid in full.

**C.     Priority Tax Debt**

The Internal Revenue Service, Tennessee Department of Revenue, and The LCF Group, Inc. have filed priority tax claims totaling $1,653.54 for pre-petition taxes. The Debtor anticipates these claims will be paid in full pursuant to the terms of the Plan.

6

**D. General Unsecured Debt**

There are three undisputed Unsecured Claims in Schedule F. These claims total $68,286.33. The Debtor has investigated and determined that related debtor, William E. Taylor, Jr., is also liable for these claims. William E. Taylor, Jr., schedules will be amended appropriately to reflect the same. Two other claims were filed as disputed Unsecured Claims. No Proofs of Claim were filed for these disputed claims in this matter.

The Debtor disputes the validity and/or amounts of some of these claims and reserves the right to object to any or all of the Allowed Unsecured Claims filed in this case. Other related individuals or entities also owe some of these claims jointly and severally.

The Debtor anticipates all Allowed Unsecured Claims will be paid in full after the satisfaction of all Allowed Secured, Allowed Administrative, and Allowed Priority Claims, from the net proceeds from the sale of Real Estate Assets and Personal Property Assets.

In the event there is not sufficient net proceeds from the sale of Real Estate Assets and Personal Property Assets to pay such claims in full, such claims will be paid pro rata. *See* the Claims Analysis attached hereto as <u>Exhibit A</u>.

**E. Interest**

The owner of the membership interest in the Debtor, William E. Taylor, Jr., will retain interest in the LLC only if Allowed Unsecured Claims are paid in full.

**V. LIQUIDATION ANALYSIS**

For this Plan to be approved by the Court, a determination must be made that the Plan will provide to each creditor or equity security holder an amount, as of the Effective Date of the Plan, that is not less than the value of the property that each such creditor would receive or retain if all of the assets of the Debtor were sold and the proceeds thereof were distributed under Chapter 7 of the Bankruptcy Code. Since the Plan is a liquidating plan in which all assets will be liquidated, if necessary, the Plan meets the liquidation test.

*See* the Liquidation Analysis attached hereto as <u>Exhibit B</u>.

The liquidation proposed pursuant to this Plan would produce a substantially better result for creditors as compared to a liquidation pursuant to Chapter 7. First, a liquidation pursuant to Chapter 7 would result in significant funds being paid to a trustee for trustee commissions. This Plan avoids those commissions. Further, the Debtor has significant knowledge regarding the property and the likely market for the property, which will result in the property being sold for fair market value. By contrast, a Chapter 7 trustee is more likely to liquidate the property by a single auction, for liquidation value. Such a sale of

7

hundreds of acres at once in a small geographic area would glut the market, most likely diluting value for the Estate.

For these reasons, the liquidation contemplated by this Plan is significantly more beneficial to creditors than a Chapter 7 liquidation.

**VI.     SUMMARY OF THE PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.     Transfer of Assets**

Under the Plan, after the payment of all Allowed Secured Priority and Unsecured Claims, the net assets and operations of the Debtor will continue to be owned, managed, and controlled by the Debtor until this case is fully administered. If all Allowed Secured Priority and Unsecured Claims are paid in full, any excess net assets and operations shall be surrendered to equity.

**B.     Payment of Claims**

1.     Unimpaired Claims. The claims of professionals who provided post-petition services, and claims for post-petition taxes due to various taxing authorities, are all unimpaired under the terms of the Plan. These obligations will be paid on the Effective Date of the Plan, such later date that such obligations become due, such later date as reached by agreement of the Claimants, or upon the sale of substantially all of the Real Estate Assets and Personal Property Assets. Additionally, the Bankruptcy Administrator's fees required to be paid by statute shall be paid current as of the Effective Date of the Plan.

2.     Priority Tax Claims. Priority tax claims allowed under § 507(a)(8) shall be paid in full within 180 days of the Effective Date of the Plan, with interest in arrears accruing at a fixed rate equal to 4.75%. No penalties that accrue after the Date of Filing will be allowed.

3.     Other Priority Claims. The Debtor does not anticipate any other Priority Claims. However, if there are Allowed Priority Claims, they will be paid in accordance with the Bankruptcy Code.

4.     Impaired Claims. The following classes of claims are impaired and will be classified and treated under the Plan as follows:

8

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1 – Bank of Frankenwing | Impaired | All Allowed Class 1 Secured Claims shall be paid upon the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor. All secured creditors will retain their liens as they existed on the Date of Filing, in the same priority existing at the Date of Filing to secure their Allowed Secured Claims pursuant to the deeds of trust and UCC filings evidencing those liens. The collateral documents evidencing all existing liens will remain unaffected hereunder except to the extent inconsistent with the terms of the Plan.<br><br>Class 1 Claimant shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 1 Claims. If Bank of Frankenwing objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 1 Secured Claim would be fully satisfied by the sale. If no objection is made in writing within twenty (20) days of the notice of sale, all Class 1 Claims shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments; however, all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class 1 Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale.<br><br>Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 1 Claim. Any terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan. |

9

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 2 – First Bank Secured Claims | Impaired | All Allowed Class 2 Secured Claims shall be paid upon the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor.  All secured creditors will retain their liens as they existed on the Date of Filing, in the same priority existing at the Date of Filing to secure their Allowed Secured Claims pursuant to the deeds of trust and UCC filings evidencing those liens.  The collateral documents evidencing all existing liens will remain unaffected hereunder except to the extent inconsistent with the terms of the Plan.<br><br>Class 2 Claimant shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 2 Claims.  If First Bank objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 2 Secured Claim would be fully satisfied by the sale.  If no objection is made in writing within twenty (20) days of the notice of sale, all Class 2 Claims shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments; however, all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class 2 Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale.<br><br>Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 2 Claim.  Any terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.<br><br>Class 2 Claimant shall have automatic stay relief to foreclose on any collateral secured by its liens if the |

10

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| | | following payment milestones are not met by the Debtor and/or related individuals or entities either jointly owning collateral with the Debtor, or jointly and severally owning and paying claims to Claimant:<br><br>Milestone 1<br>Payment to First Bank: $6.315 million<br>Timing: By June 1, 2026<br>Assumptions: From sales of Joe Quick / 396 Billy D Harbin and 1375 Walker Road part of Northaven Contract involving additional parcel; court approval required<br><br>Milestone 2<br>Payment to First Bank: $3 million<br>Timing: August 31, 2026<br>Assumptions: Based on remaining projected land sales.<br><br>Should any of these payment milestones not be met by the Debtor, any Class 2 Claimant may file a notice with the Court indicating that it has chosen to exercise its right to foreclose on its collateral; no other motion, order, or notice shall be required.<br><br>The Debtor hereby acknowledge the validity of all Class 2 Claims in the full amounts indicated on the Class 2 Claimant's proofs of claim. The Debtor further acknowledges the validity of the liens asserted in connection with all Class 2 Claims. |
| Class 3 – Colleen Wood Secured Claim | Impaired | All Allowed Class 3 Secured Claims shall be paid upon the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor. All secured creditors will retain their liens as they existed on the Date of Filing, in the same priority existing at the Date of Filing to secure their Allowed Secured Claims pursuant to the Real Estate Accommodation Mortgage, Assignment of Rents and Leases, and Security Agreement dated November 28, 2023 and recorded in the Madison County, Alabama probate records at Mortgage Bk 2023; Pg 196178, deeds of trust and UCC filings evidencing those liens. The collateral documents evidencing all existing liens |

11

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| | | will remain unaffected hereunder except to the extent inconsistent with the terms of the Plan.<br><br>Class 3 Claimant shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 3 Claims. If Colleen Wood objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 3 Secured Claim would be fully satisfied by the sale. If no objection is made in writing within twenty (20) days of the notice of sale, all Class 3 Claims shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments; however, all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class 3 Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale.<br><br>Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 3 Claim. Any terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan. |
| Class 4 – Paul Bradley Chambliss Secured Claim | Impaired | All Allowed Class 4 Secured Claims shall be paid upon the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor. All secured creditors will retain their liens as they existed on the Date of Filing, in the same priority existing at the Date of Filing to secure their Allowed Secured Claims pursuant to the Real Estate Accommodation Mortgage, Assignment of Rents and Leases, and Security Agreement dated November 28, 2023 and recorded in the Madison County, Alabama probate records at Mortgage Bk 2023; Pg 196148, |

12

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| | | deeds of trust and UCC filings evidencing those liens. The collateral documents evidencing all existing liens will remain unaffected hereunder except to the extent inconsistent with the terms of the Plan.<br><br>Class 4 Claimant shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 4 Claims. If Paul Bradley Chambliss objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 4 Secured Claim would be fully satisfied by the sale. If no objection is made in writing within twenty (20) days of the notice of sale, all Class 4 Claims shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments; however, all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class 4 Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale.<br><br>Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 4 Claim. Any terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan. |
| Class 5 – Allowed Unsecured Claims | Impaired | Class 5 shall consist of all Allowed Unsecured Claims that are not otherwise included in another Class herein. These Allowed Claims shall be paid in full of Class 5 Claims, with other Allowed Claims in this Class upon the sale of the Real Estate Assets, Personal Property Assets, including sale of net operating losses and net proceeds of claims liquidation. No interest will accrue on these Allowed Claims. |

13

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| | | In the event there is not sufficient net proceeds from the sale of Real Estate Assets and Personal Property Assets, including tax credits and claims proceeds to pay Allowed Unsecured Claims, in full, such claims will be paid pro rata. |
| Class 6 – Equity | Impaired | Class 6 consists of the membership interests in the Debtor, owned by William E. Taylor, Jr. This interest may retain interest in assets not liquidated, or net proceeds from liquidation, only if all Allowed Claims, including, but not limited to Allowed Unsecured Claims are paid in full. |

### C. Plan Default

Notwithstanding the provision of any lease or finance agreement that may survive the Confirmation of this Plan, an event of default as to any Claim shall exist if the Debtor (i) fails to make monetary payment when due and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the property securing the creditors' claim for the value of the property, or (iii) disposes of the collateral securing the claim without either the consent of the creditor holding the Claim or the payment of the net sales proceeds to that creditor.

### D. Tax Consequences

The tax consequences created by the Plan are unknown at this time. Distributions to creditors will be taxed in the same way that any payment by the Debtor to those creditors would have been taxed. In most instances, the payments will be taxable income to the creditor for which the creditor may pay income taxes if its business expenses and deductions do not offset the amount of income received by that creditor.

### E. Executory Contracts

All executory contracts and unexpired leases that either have not been assumed by Court order prior to the Effective Date of the Plan or are subject to a motion filed by the Debtor to assume such agreement prior to the Effective Date of the Plan shall be deemed rejected. The Confirmation of the Plan shall be deemed to cure any pre-existing default under an assumed agreement. Any party damaged by the rejection of an executory contract or unexpired lease shall be entitled to a Class 5 General Unsecured Claim.

14

**F.        Discharge**

Pursuant to 11 U.S.C. §1141(d)(5), unless the Court orders otherwise, the Debtor will not get a discharge until all payments under the Plan have been completed.  For the purposes of this section, the Plan states that the Debtor will have completed its obligations under the Plan if it is not in default under the Plan as of the earlier of (1) the date of the final payment to the Class 5 Claims, or (2) the sale of all Real Estate Assets and Personal Property Assets.

**G.        Implementation of the Plan**

The Effective Date of the Plan is defined under the Plan to be the first day of the second full month after the entry of the Court order confirming the Plan.

(a)        The Plan will be funded by the following:  The Debtor will continue funding the Plan through sale of the Real Estate Assets until the earlier of (a) sufficient funds has been raised to pay all claims in full or (b) such Real Estate Assets have been liquidated;

(b)        The Debtor will market and sell, by means to be determined by the Debtor in its exclusive business judgment, Real Estate Assets sufficient to pay all Allowed Administrative Claims, all Allowed Priority Claims, all Allowed Secured Claims, and all other Allowed Claims in full, as provided in the Plan. The sale of the Real Estate Assets will be completed as soon as practicable, as determined by the Debtor in consultation with respective Secured Creditors. The Debtor will determine the order and timing of sale of the Real Estate Assets.  Creditors in Classes 1-5 shall retain their rights to credit bid in the sale of any Real Estate Asset encumbered by a properly perfected security interest.  Once sufficient funds to satisfy all claims have been generated by the sale of Real Estate Assets, the Debtor will cease selling unliquidated Real Estate Assets and the balance of Property (including cash and Real Estate Assets) will be returned to the Debtor as the holder of the only Class 6 Claim;

(c)        If all Real Estate Assets have not been liquidated by the first day of the six (6th) month following the Effective Date, or if All Allowed Claims in Classes 1-5 have not been fully satisfied by then, the Debtor, within its sole discretion, shall either employ an auctioneer to auction all remaining Real Estate Assets or grant any remaining creditor in Classes 1-5 relief from the discharge injunction to foreclose on its unsold collateral;

(d)        Contemporaneously with the marketing the Real Estate Assets in classically brokered sales, the Debtor, in consultation with the Realtor(s) retained in this case, counsel, related Secured Claimants,  and other interested parties will solicit auctioneer professionals to market and sell by public auction any

15

Real Estate Assets not sold nor contracted to sell by the conclusion of the Marketing Period. Any Auctioneer hired by the Debtor shall be submitted for Court Approval as a Professional. Bidding Procedures are attached hereto as <u>Exhibit C</u> for approval at confirmation. These Bidding Procedures may be modified by Debtor in consultation with the proposed Auctioneer and other interested parties set forth above, which shall be submitted for comment and approval by the Court;

(e) The Debtor will market and sell, by means to be determined by the Debtor in its exclusive business judgment, Personal Property Assets sufficient to pay all Allowed Administrative Claims, all Allowed Secured Claims, and all other Allowed Claims in full, as provided in the Plan. The sale of the Personal Property Assets will be completed as soon as practicable, as determined by the Debtor. The Debtor will determine the order and timing of sale of the Personal Property Assets. Once sufficient funds to satisfy all claims have been generated by the sale of Personal Property Assets, the Debtor will cease selling unliquidated Personal Property Assets and the balance of Property (including cash and Personal Property Assets) will be returned to the Debtor as the holder of the only Class 6 Claim; and

(f) The Debtor will file with the Court an accounting and will seek the entry of a Final Decree as required under Bankruptcy Rule 3022 following the Effective Date of the Plan and the administration of the Estate. During this period the Debtor shall submit reports and pay quarterly fees to the Bankruptcy Administrator as required by law. Upon completion of payments to Class 5, the Debtor reserves the right to file a motion to reopen the case in order to obtain a discharge order pursuant to 11 U.S.C. § 1141(d)(5), if needed.

Until the Case is closed, the Debtor will continue to remain in possession of all Property pursuant to 11 U.S.C. § 1108 and shall continue to pay Bankruptcy Administrator fees as required.

All creditors are urged to review the Debtor's Plan for a more detailed description of the treatment to be provided for each impaired class. To the extent the Plan and this Disclosure Statement are inconsistent, the terms of the Plan shall control.

## VII. CONFIRMATION REQUIREMENTS

To confirm the Plan, the Court must, after notice provided by separate order, hold a hearing on the question of confirmation. Any creditor may object to the confirmation of the Plan and appear at the confirmation hearing to prosecute such objection. The requirements for confirmation of a Chapter 11 Plan are set forth in detail in 11 U.S.C. § 1129. The following is a summary of the more notable requirements:

### a. Acceptance by Impaired Classes

At least one class of impaired claimants must vote to accept the Plan. 11 U.S.C. § 1129(a)(10). For a class to accept the Plan, the Plan must receive favorable votes from claimants within that class who hold at least two-thirds in dollar amount of the claims that vote and more than one-half of the claims that vote. Only the amount and number of claims who actually submit a timely ballot are counted in determining the requisite number.

### b. Feasibility

The Court is required to find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor. 11 U.S.C. § 1129(a)(11). In short, the Court must find that the Plan adequately addresses the needs for reorganization and that it is likely that the reorganized entity will be able to perform pursuant to the Plan. A finding by the Court that the Plan meets these requirements is not a guarantee that the Plan will be fully performed.

As the Plan is a Liquidation Plan, the feasibility requirement is met.

### c. Liquidation Test

As discussed in Section V herein, the Plan must pay to each class that has not accepted the Plan an amount determined as of the Effective Date of the Plan that is not less than the amount a claimant within that nonaccepting class would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7). As the Plan is a Liquidation Plan, the liquidate test is met.

### d. "Cramdown" Provisions

If an impaired class does not vote to accept the Plan, as discussed in paragraph VII.a. above, the Court may still confirm the Plan if the Court determines that the Plan treatment of the class of claims rejecting the Plan is fair and equitable and does not discriminate unfairly. 11 U.S.C. § 1129(b). The Debtor intends to invoke these "cramdown" provisions should any class of impaired claims fail to accept the Plan. The Debtor believes that, with respect to each class, the Plan is fair and equitable and does not discriminate unfairly. In the event the Debtor must resort to 11 U.S.C. § 1129(b), it contends that the absolute priority rule is satisfied because Class 6 interest will receive no distribution unless all other creditors are paid in full.

17

Respectfully submitted,

Pegrum Creek, LLC
By: William Edwin Taylor, Jr.
Its:   Chief Executive Officer

/s/ *Stuart M. Maples*
Stuart M. Maples (abs-1974-s69s)
Thompson Burton, PLLC
200 Clinton Avenue West, Suite 1000
Huntsville, AL 35801
256-489-9752
smaples@thompsonburton.com
*Counsel for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that, on the same day as this filing, I have served a true and correct copy of the **Debtor's Amended Disclosure Statement** on all creditors on the attached mailing matrix and on (i) the Office of the Bankruptcy Administrator, (ii) the Debtor's 20 largest unsecured creditors, (iii) all counsel of record requesting notice, (iv) the Internal Revenue Service, (v) all secured creditors, (vi) any governmental agencies that request special notice, and (vii) all other persons requesting notice, by depositing the same in the United States Mail, postage prepaid and properly-addressed, via electronic mail at the previously-provided e-mail address, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures.

/s/ *Stuart M. Maples*
Stuart M. Maples

18