IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | |
| | **)** | |
| Pegrum Creek, LLC, | **)** | CASE NO. 24-81037-CRJ11 |
| SSN: XX-XXX6194 | **)** | CHAPTER 11 |
| | **)** | |
| Debtor. | **)** | |

## MEMORANDUM IN SUPPORT OF CONFIRMATION AND RESPONSE TO OBJECTIONS

COMES NOW Pegrum Creek, LLC, as debtor and debtor-in-possession in the above-styled Chapter 11 case ("Debtor"), in compliance with paragraph 7 of the *Order: (1) Approving Second Amended Disclosure Statement; Scheduling Confirmation Hearing; Fixing Time for Objecting To Confirmation and for Filing Acceptances or Rejections of Plan* (ECF No. 331), and submits the following memorandum ("Memorandum") in support of confirmation of its Chapter 11 Plan of Liquidation and responds to the various objections to the Plan.  Except as otherwise defined, all capitalized terms in the Memorandum have the same meaning set forth in the Plan. Pursuant to the Court's Order, the Confirmation Hearing in this matter is set for January 22, 2026 at 11:00 a.m.

## BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on June 3, 2024.  The Debtor is currently operating and managing its affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

On December 16, 2025, Debtor filed its Third Amended Chapter 11 Plan of Liquidation (the "Plan") (ECF No. 325).

The Debtor's Second Amended Disclosure Statement was approved by the Court on December 18, 2025, as containing adequate information (ECF No. 331), as required by § 1125.

## SUMMARY OF KEY PLAN PROVISIONS

This Plan provides for four classes of secured claims; one class of general unsecured claims; and one class of the Interest of the Debtor. Unsecured creditors holding Allowed Unsecured Claims will either receive payment in full or a pro rata distributions from the sale of Real Estate Assets, Personal Assets, and Company Distributions. This Plan also provides for the payment of all Allowed Administrative and Allowed Priority Claims. Unless all Allowed Secured, Allowed Administrative, Allowed Priority and Allowed Unsecured Claims are paid in full, Interest of the Debtor will receive $0.00 unexempt distribution. Only exempt and surplus Property or Proceeds will be available for Interest.

<u>**OBJECTIONS TO THE PLAN AND DEBTOR'S RESPONSE**</u>

The Debtor proposes to modify the Plan prior to confirmation to include:

<u>**Objection of Creditor Madison County (ECF No. 335):**</u>

***Madison County objects to its treatment of its Secured Claim for 2024 and 2025 Ad Valorum Taxes. The Debtor proposes such claims shall be paid as Property is sold during the Plan, with such taxes being paid from initial gross proceeds of such sale. These taxes shall be paid by the closing agent at or immediately after closing. In no event shall any such taxes due be left unpaid two (2) years from confirmation, as is permitted by Sec. 1129(a)(9)(D), as prescribed in subparagraph (C). In addition, Madison County's Secured Claim for unpaid 2024 Ad Valorem Property Taxes includes the following three parcels that were previously sold during the pendency of this Bankruptcy proceeding for which the 2024 property taxes remain unpaid: PIN 69972 (Joe Quick Road); PIN 124075 (131 Tanner Road); and PIN 153663 (1966 Walker Lane). The unpaid 2024 Ad Valorem Property Taxes for PIN 69972; PIN 124075; and PIN 153663 shall also be paid from the proceeds of the sale of Property sold during the administration of the Plan. The taxes will be paid within forty-five (45) days from the date of confirmation.***

<u>**Objection of the Bank of Frankewing (ECF No. 339):**</u>

**The Bank objects to the Plan on several grounds. The Debtor responds as follows, and proposes to modify its Plan accordingly:**

<u>Paragraph 16 (a) Certificate of Deposit</u>

16.     Bank of Frankewing is currently holding a certificate of deposit bearing an account number ending in 6910 in the name of the Debtor with an approximate current balance of $142,556.40 (hereinafter referred to as the "CD"). The CD secures all six of Bank of Frankewing's claims in this case by virtue of the cross-collateralization language contained in the relevant security agreements, mortgages and loan documents. The Plan does not appear to make refence to the CD. Bank of Frankewing objects to confirmation of the Plan to the extent the Plan does not surrender the CD to Bank of Frankewing in order that it may be applied to and set off against Bank of Frankewing's claims.

***The Debtor agrees that the Bank of Frankewing has a lien on the CDs, that the Debtor surrenders the CD to Bank of Frankewing, the automatic stay, if any, shall lift upon confirmation and the proceeds from the CDs may be applied to the Bank of Frankewing's Allowed Secured Claim(s).***

2

17.     Section 2.03 of the Plan defines "Allowed Secured Claim" as "the lesser of (I) the 'Value of the Property' securing the Allowed Claim set under the Plan or otherwise determined by the Court at Confirmation, or (ii) the amount of the Allowed Claim plus post-petition interest and fees accrued from the Date of Filing until the Effective Date of the Plan as allowed under §506(b)." The term "Value of the Property" does not appear to be defined in the Plan. In addition, the Plan does not appear to otherwise determine the amount of any claim. The Plan is unclear in terms of the actual amount of the allowed secured claims.

18.     Since there will be no determination as to the amount of Allowed Secured Claims at confirmation, the latter phrase of the Section 2.03 "lesser of" definition must be the only potential determination of Allowed Secured Claims. That latter phrase indicates the amount of the Allowed Secured Claim is the amount of the Allowed Claim plus post-petition interest and fees accrued from the Date of Filing until the Effective Date of the Plan as allowed under §506(b). The Plan calls for an Effective Date of the first business day of the second month following the Confirmation. PACER Doc. No. 325, Sec. 2.15. However, the Plan also provides the Debtor with six months after the Effective Date within which to sell the Real Estate Assets, to be followed by an auction or an abandonment. Accordingly, it is likely that holders of claims secured by Real Property Assets will likely not see those properties sold until substantially after the Effective Date. The secured claims should continue to accrue interest, costs and fees beyond the Effective Date to the extent such claims are over secured.

19.     Bank of Frankewing objects to the Plan's provisions related to Allowed Secured Claims to the extent it is unclear if the Confirmation Order serves to reduce the amounts of any secured claims. Bank of Frankewing further objects to the Plan's restriction against the continued accrual of interest, costs and fees beyond the Effective Date. 20 Lien Avoidance.

*The "Value of the Property" to be paid to the Bank shall be the net proceeds from a fair market sale of property sold pursuant to the Plan which is either unobjected to or approved by the Court over objection.  Net proceeds shall be the sales price of the property less costs of sale, Ad Valorum Taxes, and liens having priority over the liens of the Bank. The Allowed Secured Claims shall be entitled to accrue interest, attorney's fees and costs beyond the Effective Date*

3

*and through the closing of the Bankruptcy Case. To the extent such Allowed Secured Claims are oversecured, the secured creditors shall be entitled to recover post-petition attorney's fees.*

Paragraphs 20-21

20 (c) Lien Avoidance.    One of the reasons why it is critical to establish the Plan's alteration or non-alteration of the Allowed Secured Claims is because Section 6.06 of the Plan calls of the voiding of all liens in excess of the Allowed Secured Claim." The Plan currently calls the Allowed Secured Claims into question as to their amounts but also effectuates an automatic voiding of secured creditors' liens. Bank of Frankewing objects to confirmation of the Plan to the extent it proposes to void liens in the absence of a future claim objection or motion to avoid lien.

21.    The lien avoidance provision found in Section 6.06 also appears to conflict with the "Treatment" sections within Article V. The relevant sections state, "[a]ll secured creditors will retain their liens as they existed on the Date of Filing, in the same priority existing at the Date of Filing to secure their Allowed Secured Claims pursuant to the deeds of trust and UCC filings evidencing those liens.

***The Debtor's Plan shall not automatically void liens absent future claims objections or motions to avoid liens.***

Paragraphs 22-23 (d)  Treatment of Real Estate (Articles V and VIII)

22.    Articles V and VIII of the Plan provide the Debtor six months from the Effective Date (potentially, until October 1, 2026) to sell the Real Estate Assets with a 20-day notice to impacted secured creditors.  After that date, the Debtor, within its sole discretion, will employ an auctioneer to sell the Real Estate Assets.  PACER Doc. No. 325, Article V and Section 8.01(c) and (d).  The Plan provides the Debtor with the option at the end of the six month sale period of (1) abandoning any remaining real property, or (2) hiring an auctioneer in the Debtor's sole discretion. PACER Do. No. 325.

23.    Bank of Frankewing objects to the provisions in Section 8.01 of the Plan to the extent there do not appear to be any deadlines associated with when the Debtor must decide to auction or abandon the Real Estate Assets following the expiration of the six-month sale

period. The Debtor should be required to make its election as to whether to auction the Real Estate Assets or abandon them within ten days of the expiration of the six-month sale period.

***The Debtor agrees to make its election to either auction Real Estate Assets or abandon such assets within thirty fourteen (1430) days of the expiration of the six-month sale period. In the event the Debtor chooses to auction the Real Estate Assets, such auction shall take place within sixty (60) days of the expiration of the six-month sale period.***

Paragraphs 24-25

24.    Bank of Frankewing objects to the Plan's Article V requirement that sales of Real Estate Assets be conducted "free and clear of liens" with a requirement that "all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class I Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale." PACER Doc. No. 325, Art. V. The Plan should make it clear that liens attach to the proceeds of each sale of collateral.

25.    The Plan provides "[a]ny terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan." PACER Doc. No. 325, Art. V. Bank of Frankewing objects to the Plan to the extent it proposes to alter the terms of the contractual documents associated with its loans to the Debtor. Where the Plan prop01is to permit the sale of collateral free and clear of liens, the confirmation order would presumably have the impact of nullifying the properly perfected security interests the Debtor willingly pledged to Bank of Frankewing.

***The liens representing securing Allowed Secured Claims shall attach to the proceeds of each sale of collateral.***

Paragraph 26

26.    Bank of Frankewing objects to the Plan to the extent it calls for Allowed Secured Claims to retain their liens pursuant to "deeds of trust and UCC filings." PACER Doc. No. 325. Bank of Frankewing's liens on Real Estate Assets are largely perfected by mortgages and possession, which are not mentioned in Article V. Bank of Frankewing's liens should be retained as they existed on the Date of Filing without regard to the manner in which they were perfected.

*Liens on Real Estate Assets and other assets secured by mortgages or possession of collateral are perfected as they would be perfected under state law.*

Paragraphs 27 (e)  Bidding Procedures

27.     Section 8.0l(d) of the Plan calls for the approval of the Bidding Procedures (hereinafter referred to as "Bidding Procedures") set out in Exhibit at confirmation. However, the Plan calls on the Bidding Procedures to be subject to modification and subsequent approval by the Court with notice to parties in interest. Bank of Frankewing suggests it may be appropriate to approve a form of bidding procedures, subject to notice of final bidding procedures to follow in the event an auction becomes necessary.

*The Bidding Procedures attached as Exhibit A to the Plan are to be approved as to form only at confirmation. The final Bidding Procedures shall permit credit bidding and remain subject to approval by the Court following notice to creditors with an opportunity to object.*

Paragraph 28(c)

28(c).  The Bidding Procedures are incomplete because they anticipate sale terms are not yet known. Accordingly, it is premature to approve the Bidding Procedures at confirmation, except as to form.

*The Bidding Procedures attached as Exhibit A to the Plan are to be approved as to form only at confirmation. The final Bidding Procedures shall permit credit bidding and remain subject to approval by the Court following notice to creditors with an opportunity to object.*

Paragraph 28 (a)

28(a).  The term "Marketing Period" does not appear to be defined.

*The Marketing Period shall be defined as the period of time permitted for sale of Real Estate Assets pursuant to each Class in the Plan.*

Paragraph 28(b)

28(b). There do not appear to be provisions for credit bidding or for determining secured creditors are "Qualified Bidders." Credit bidding is permitted by Section 8.0l(b) of

6

the Plan. The Bidding Procedures appear to provide the Debtor with the authority to reject any bid or bidder, which could potentially allow the Debtor to unilaterally reject credit bids submitted by secured creditors.

***Credit Bidding by creditors holding Allowed Secured Claims not otherwise objected to shall be allowed, subject to sustained claim objections.***

Paragraphs 30-31

30.     The Plan proposes certain milestone payments totaling $9,315,000 to Class 2 Claims secured by some of the Real Estate Assets. PACER Doc. No. 325. The provision of milestone payments to Class 2 Claims to the exclusion of Bank of Frankewing and its Class I Claims is a violation of 11 U.S.C. §1129(b) in that the Plan is not fair and equitable. The Plan treats Bank of Frankewing and its Class I Claims unfairly and inequitably by not providing it with "milestone payments" at least similar to those it provides to Class 2 Claims.

31.     The Milestone 1 payment in the amount of $6.315 million payable to Class 2 on June 1, 2026 does not coincide with the actual sale of real property described in PACER Doc. Nos. 242,308,314 and 316, see also Plan, Art. V. The proposed §363 sale described by the Motion to Sell Free and Clear of Liens includes an amended purchase price of $6,015,000.00, of which approximately $3,372,426.24 is expected to be allocated to First Bank. In other words, the Debtor cannot pay First Bank $6.315 million on the sale approved by the Court when the proposed sale is only expected to generate a little over half of that amount from the sale of Real Property encumbered by First Bank.

***The sale currently approved will not be paid in full to Class II, but rather will be paid to superior priority claims of Classes I and II accordingly.***

Paragraph 32 (g) Automatic Stay

32.     The Plan provides Class 2 Claims with relief from the automatic stay in the event that the referenced milestone payments are not paid on time. Plan, Art. V.  No other creditors are

7

provided with the benefit of milestone payments or relief from stay. Bank of Frankewing objects to confirmation to the extent the Plan does not lift the automatic stay for secured creditors at confirmation or, in the alternative, provide lift of stay provisions equally to similarly classed secured creditors. At a minimum, the Plan should make it clear that the automatic stay lifts as to collateral that has not been sold in the six-month period set out in Section 8.0l(c) and (e).

***The Debtor's Plan does terminate upon the end of the six-month period and its 14 days to auction election.***

Paragraphs 33 and 34 (h) Discharge.

33. Section 6.05 of the Plan calls for the discharge of all Allowed Unsecured Claims. The Debtor is not an individual in a Chapter 11 case with a liquidating plan. The Debtor is not eligible for a discharge. See 11 U.S.C. §§l 141(d)(3) and 727(a)(l).

34. Section 8.0l(c) provides that Class 1-5 creditors that have not been fully satisfied by the sale of Real Estate Assets may be granted "relief from the discharge injunction to foreclose on its unsold collateral." Section 8.0l(c) should be revised to make it clear any automatic stay or other prohibition against secured creditors enforcing their liens should be removed following the expiration of the six-month period within which the Debtor is required to attempt to sell the Real Estate Assets. Section 8.01(c) should also be revised to remove references to a discharge.

***The Debtor waives any claim to discharge and removes from the Plan any reference to Sec. 1145 of the Bankruptcy Code.***

**Objections of Paul Bradley Chambliss and Colleen Woods: (ECF No. 337)**

***Chambliss files a limited objection stating that the Plan should include a reference to the six (6) tracts upon which Chambliss has a perfected mortgage interest so as to give notice of potential sale of any such parcel as required by the Plan to allow Chambliss an opportunity to object to said sale. The Debtor agrees that the following chart contained in the Objection be incorporated into the Plan (except for renumbering the Tracts so that there is a 6th Tract and two 5th Tracts) for the purpose of notice.***

| Parcel As Identified in Disclosure Statement | Parcel as Listed in Wood & Chambless Mortgages | Parcel Tax ID Number |
|---|---|---|
| 0 Billy D. Harbin Rd. (52 acres) | Tract 1 | 03-05-22-0-000-045.003 |
| 0 Billy D. Harbin Rd. (1.2 acres) | Tract 2 | 03-05-22-0-000-045.005 |
| 0 Billy D. Harbin Rd. (0.9 acres) | Tract 3 | 03-05-22-0-000-045.006 |

8

| | | |
|---|---|---|
| 0 Joe Quick Road (77 acres) | Tract 4 | 03-05-21-0-000-037.000 |
| 0 Walker Lane (36 acres) | Tract 5 | 03-08-33-0-000-007.000 |
| 1375 Walker Lane (96 acres) | Tract 5 | 03-08-28-0-000-046.000 |

## VOTING

**A. Acceptance of Plan by Voting.**

For the Plan to be accepted by an impaired class of claims, it must be accepted by holders of Claims in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims in such Class held by creditors that actually vote. A Class is impaired if the legal, equitable, or contractual rights of the members of such class are modified or altered by the Plan (with an exception, not applicable to the Plan, for curing defaults, reinstating maturity, and compensating certain damages). Classes 1 through 6 in this Plan are impaired and entitled to vote. As of the Date of this Memo, three (3) Classes have accepted the Plan (First Bank, Colleen Woods and Paul Bradley Chambliss, one (1) Class has rejected the Plan (Bank of Frankewing), and Class 5 (Unsecured Claims) has no votes and Class 6 (Interest) has one (1) vote. The unclassified claim of Madison County has also registered a rejecting vote. Negotiations with the rejecting creditors is continuing, and it is anticipated that one or more of these ballots may change to accepting.

Even if one but not all impaired Classes accept the Plan, the Debtor may seek confirmation of the Plan under the provisions of Section 1129(b) of the Bankruptcy Code. To obtain confirmation the Debtor must show to the Bankruptcy Court that the Plan does not discriminate unfairly and is fair and equitable with respect to each such rejecting Class. *See* § 1129(b). The Plan further satisfies the "absolute priority rule," as no class of creditors or interests will receive distribution under the Plan unless all superior priority classes are paid in full.

**B. Feasibility.**

The Debtor believes that the Plan provides general unsecured creditors with the best return that can be achieved in this case. Under the Plan, Administrative Claims will be paid in full (or as otherwise agreed to by the holders of such Claims), Allowed Secured Claims will be paid direct by the Debtor, as agreed, and Allowed Unsecured Creditors will receive a distribution that exceeds any distribution that they would receive were the Chapter 11 case converted to a case under Chapter 7 of the Bankruptcy Code.

The Plan complies with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As demonstrated herein, the Plan satisfies all of the requirements of Sections 1122, 1123, each applicable element of Section 1129 of the Bankruptcy Code. Further, the Plan complies with Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## THE PLAN IS DUE TO BE CONFIRMED

The Debtor, as plan proponent, bears the burden of showing by a preponderance of the evidence that the Plan complies with each element of § 1129 of the Bankruptcy Code. *In re Briscoe*

*Enters, II*, 994 F.2d 1160, 1163 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993); *see Grogan v. Garner*, 498 U.S. 279, 286 (1991). Objecting creditors bear the burden of producing evidence to support their objections. *Matter of Genesis Health Ventures*, 266 B.R. 591, 599 (Bankr. D. Del. 2001). The Debtor may rely on the court record as well as the evidence presented at the confirmation hearing. *See, e.g., In re Gulfstar Indus.*, 236 B.R. 75, 77-78 (M.D. Fla. 1999).

It is anticipated that the record in this case, including testimony and other evidence offered in support of confirmation, will show the Plan meets each and every element of Section 1129(a) and (b). Accordingly, the Plan is due to be confirmed. *See*, 11 U.S.C. § 1129(a) and (b) (court shall confirm a plan that satisfies listed requirements).

### A.      Section 1129(a)(1).

Section 1129(a)(1) requires the Plan to comply with the applicable provisions of the Bankruptcy Code. The legislative history suggests that subsection (a)(1) primarily is intended to ensure that plans comply with §§ 1122 and 1123 of the Bankruptcy Code. *See*, H.R. Rep. No. 585, 95th Cong., 1st Sess. 412 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6368; S. Rep. No 989, 95th Cong. 2d Sess. 126 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5912.

### 1.      The Plan Meets the Applicable Provisions of the Bankruptcy Code.

The face of the Plan demonstrates compliance with §§ 1122 and 1123 of the Bankruptcy Code. The Plan designates classes, specifies a treatment for each class, specifies impaired and unimpaired classes and provides the same treatment for each claim or interest in each particular class. Accordingly, the Plan meets the requirements of §§ 1122 and 1123(a)(1)-(4).

In the absence of apparent and significant harm to creditor rights due to the alleged violation of other Bankruptcy Code provisions, an affirmative showing of compliance with Sections 1122 and 1123 is sufficient to satisfy Section 1129(a)(1). *See Collier* ¶1129.03[1] at 1129-25 to 26. Without specific objection, the Debtor is not required to present evidence with respect to each and every provision of the Bankruptcy Code. *See, e.g., Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2nd Cir. 1988); *In re Aspen Limousine Servs.*, 193 B.R. 325, 339-40 (D. Colo 1996); *see also*, *Genesis*, 266 B.R. at 599 (creditors must produce evidence to support objection). The Plan clearly meets the requirements of §§ 1122 and 1123. Thus, the Court should find the Plan complies with the applicable provisions of the Bankruptcy Code and satisfies § 1129(a)(1).

### B.      1129(a)(2).

Subsection 1129(a)(2) requires compliance with the Bankruptcy Code as a whole. However, in the absence of any allegation or objection properly supported by evidence that the plan proponent has violated a specific, material provision of the Bankruptcy Code (which violation remains unremedied), 1129(a)(2) is satisfied by an affirmative showing with respect to disclosure requirements. *In re Landing Assocs, Ltd.*, 157 B.R. 791, 811 (Bankr. W.D. Tex. 1993); *see Kane*, 843 F.2d at 648 (applying harmless error rule of Fed. R. Bankr. P. 9005 with respect to statutory compliance requirements so that "relief under the bankruptcy laws is not to be withheld because

10

of technicalities"). Accordingly, the record shows that the Debtor, as a proponent of the Plan, has met the requirements of § 1129(a)(2).

**C.      1129(a)(3).**

Section 1129(a)(3) requires that the Plan has been filed in good faith and not by any means forbidden by law. Accordingly, the Court may determine that subsection (a)(3) is satisfied without further evidence. *See* Fed. R. Bankr. P. 3020(b)(2); *Genesis*, 266 B.R. at 599.

Good faith requires only a reasonable likelihood that the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995). The Plan itself shows a reasonable likelihood of achieving a proper result under the Bankruptcy Code. The Debtor is not likely to need further financial reorganization. Accordingly, the Plan is feasible and the Debtor can demonstrate that the Plan is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization of the Debtor. Accordingly, the Debtor has proposed the Plan in good faith.

In addition to good faith, subsection (a)(3) requires only that the Plan's proposal (as opposed to the contents of the Plan) comply with applicable non-bankruptcy law. *See In re General Development Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991). In the absence of any objection or allegation that Debtor has not complied with applicable law, the Court has ample evidence to find that § 1129(a)(3) is satisfied. *See id.*, *see also*, *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir. 1988); *In re Koelbl*, 751 F.2d 137, 139 (2nd Cir. 1984); *Genesis,* 255 B.R. at 599.

**D.      1129(a)(4).**

Section 1129(a)(4) requires that the payments for services in connection with the case or the plan have been approved by or are subject to approval by the Court as reasonable. The Plan provides that Fee Claims shall be paid only upon application and approval pursuant to Section 330 of the Bankruptcy Code. Accordingly, the Plan satisfies § 1129(a)(4). *See In re Schutlz*, 69 B.R. 629, 631-632 (D.S.D. 1987).

**E.      1129(a)(5).**

Section 1129(a)(5) requires that the Debtor disclose the identity of any individual proposed to serve after confirmation as an officer officer, director, voting trustee, participating affiliate or successor to the Debtor under the Plan. Paragraph A of Article II of the Disclosure Statement expressly states "[S]hould any assets remain after the liquiation of the estate, Pegrum Creek will continue to be owned and managed by William E. Taylor, Jr., upon confirmation." Thus, the Debtor's Plan complies with the requirements of § 1129(a)(5).

**F.      1129(a)(6).**

11

Section 1129(a)(6) preserves the right of any governmental regulatory commission with jurisdiction over rates to approve any rate change provided for in a plan. The Debtor believes and is reliably informed that it does not charge any rate that is subject to the jurisdiction of any governmental regulatory commission which would require it to seek such commission's approval of any rate changes. Accordingly, § 1129(a)(6) is satisfied.

### G.        1129(a)(7).

Section 1129(a)(7) provides that holders of claims or interests in each impaired class must either, accept the Plan or receive or retain under the Plan on account of such claims or interests, property of a value that is not less than the amount such holders would retain or receive if the debtors were liquidated under chapter 7. The Plan complies with § 1129(a)(7).

In accordance with the Plan, all Allowed Unsecured Claims must be paid, in full, from the liquidation of the Assets from the Estate, before any distribution may be made to any Interest holder.

Based on the foregoing, the record shows that each creditor will receive at least as much under the Plan than in chapter 7. Therefore, the Plan satisfies § 1129(a)(7).

### H.        1129(a)(8).

Section 1129(a)(8) requires that each class of claims or interests either accept the Plan or not be impaired under the Plan. The Ballot Summary shows that classes which are entitled to vote on the Plan, voted to either accept the Plan or will not be impaired under the Plan.

### I.        1129(a)(9).

Section 1129(a)(9) requires the Plan to provide for full payment of all administrative expense claims and other claims entitled to priority under § 507(a)(1)-(9) of the Bankruptcy Code. The Plan provides that Allowed Administrative Expense Claims and Allowed Tax Claims to be paid in full in cash on or at the Effective Date, except to the extent the holder of the Claims accepts other settlement. Accordingly, the Plan complies with § 1129(a)(9).

### J.        1129(a)(10).

Section 1129(a)(10) requires acceptance by at least one impaired, non-insider class. Section 1126 of the Bankruptcy Code provides, in part, that "[a] class of claims has accepted a plan if such plan has been accepted by creditors …that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors." *In re Miami Trucolor Offset Serv. Co.,* 187 B.R. 767, 769 (Bankr. S.D. Fla. 1995). As discussed herein, the Debtor's Plan meets the requirements of §1129(a)(10).

### K.        1129(a)(11).

12

Section 1129(a)(11) requires that confirmation is not likely to be followed by the liquidation or further reorganization of the Debtor unless such liquidation or reorganization is proposed in the Plan. This Plan contemplates 100% disbursement to Administrative Claims, Priority Claims and the Secured Claims of approximately $23,560,308.51. Accordingly, the Plan satisfies § 1129(a)(11). *See, e.g., In re T-H New Orleans, Ltd. Partnership*, 116 F.3d 790, 801-02 (5th Cir. 1997); *In re Travelstead*, 227 B.R. 638, 651 (D. Md. 1998).

**L.      1129(a)(12).**

Section 1129(a)(12) requires payment of certain statutorily mandated fees pursuant to 28 U.S.C. § 1930. The Plan provides for full payment of all of these fees as Administrative Expense Claims. *See* Section IV. Accordingly, the Plan satisfies § 1129(a)(12).

**M.      1129(a)(13).**

Section 1129(a)(13) requires the continuation of payment for certain retiree medical benefits, as defined in § 1114 of the Bankruptcy Code, for the duration of the period the debtor has obligated itself to provide such benefits. The Debtor did not—prior to or after its Chapter 11 filing—provide any retiree benefits to any of its employees. Accordingly, § 1129(a)(13) is not applicable.

**N.      1129(a)(14) and (15).**

Bankruptcy Code § 1129(a)(14)-(15), which relates to domestic support obligations and required payments by individual debtors, is not applicable because Debtor is a limited liability company.

**O.      1129(a)(16).**

Section 1129(a)(16) does not apply as the Debtor is not an individual nor a non-profit.

**P.      1129(b).**

As set forth above, these provisions are met. The Allowed Claims in this case will be paid in full or all assets will be liquidated to pay any claims in accordance with the priority scheme of the Bankruptcy Code.

13

## CONCLUSION

Based on the foregoing, the Plan is due to be confirmed.

Respectfully submitted on January 21, 2026.

/s/ Stuart M. Maples
STUART M. MAPLES
(ABS-1974-S69S)

THOMPSON BURTON PLLC
REGIONS CENTER
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@thompsonburton.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January 2026, I served a copy of the foregoing **Memorandum in Support of Confirmation** on the Office of the Bankruptcy Administrator; the twenty largest creditors; the Internal Revenue Service; on all secured creditors; all counsel of record; any governmental agencies that request special notice; and those persons who served on counsel for the Debtor and filed with the Clerk of this Court a notice, requesting service of papers filed in this case by depositing the same in the United States Mail, postage prepaid and properly addressed or via electronic mail, or via the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures.

/s/ Stuart M. Maples
STUART M. MAPLES