IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | |
| | **)** | |
| Pegrum Creek, LLC, | **)** | CASE NO. 24-81037-CRJ11 |
| EIN: XX-XXX6194 | **)** | CHAPTER 11 |
| | **)** | |
| Debtor. | **)** | |

## DEBTOR'S FOURTH AMENDED CHAPTER 11 PLAN OF LIQUIDATION DATED JANUARY 26, 2026

### ARTICLE I
### SUMMARY

1.01    This Plan of Liquidation under Chapter 11 of the Bankruptcy Code (the "Plan") proposes to pay the creditors of Pegrum Creek, LLC (the "Debtor") as set forth herein.

1.02    This Plan provides for four classes of secured claims; one class of general unsecured claims; and one class of the Interest of the Debtor.  Unsecured creditors holding Allowed Unsecured Claims will either receive payment in full or a pro rata distributions from the sale of Real Estate Assets, Personal Assets, and Company Distributions, as defined herein.  This Plan also provides for the payment of all Allowed Administrative and Allowed Priority Claims.  Unless all Allowed Secured, Allowed Administrative, Allowed Priority and Allowed Unsecured Claims are paid in full, the Debtor's sole member, William E. Taylor, Jr., will receive $0.00 unexempt distribution for his membership interest in the Debtor.  Only exempt and surplus Property or Proceeds will be available for interest.

1.03    All creditors and interest holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and interest holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one).**

**1.04    IN THE EVENT THAT ALL OF THE PROVISIONS OF 1129(a) OTHER THAN 1129(a)(8), AND AT LEAST ONE BUT NOT ALL OF THE CLASSES HAVE VOTED TO ACCEPT THE PLAN, THE DEBTOR, AS PROPONENT OF THE PLAN, DOES HEREBY REQUEST CONFIRMATION OF THE PLAN UNDER 1129(b), AND THE DEBTOR SO PROFFERS THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY, AND IS FAIR AND EQUITABLE.**

2.01     Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

2.02     "Allowed Claim" shall mean a Claim that is evidenced by a proof of claim that has been filed under §501 or deemed filed under §1111(a), and any timely filed objection has been resolved by a final non-appealable order.  The amount of any Claim shall be reduced by any post-petition payments made to the Creditor prior to the Effective Date of the Plan.  As used herein, Claim shall include claims against property of the estate that may be allowed as secured under § 506 of the Code.

2.03     "Allowed Secured Claim" shall mean a Secured Claim in an amount equal to the lesser of (i) the "Value of the Property" securing the Allowed Claim set under the Plan, or (ii) the amount of the Allowed Claim plus post-petition interest and fees accrued from the Date of Filing until the closing of the Bankruptcy Case.  To the extent any Allowed Secured Claim is oversecured, such Allowed Secured Claim holder shall be entitled to recover post-petition attorney's fees.

2.04     "Allowed Unsecured Claim" shall mean an Allowed Claim that is not otherwise an Allowed Secured Claim or an Allowed Claim entitled to priority under §507 of the Code.

2.05     "Chapter 11" shall mean Chapter 11 of the Code.

2.06     "Claim" shall mean a claim against the Debtor as defined in § 101(5) of the Code.

2.07     "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

2.08     "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

2.09     "Confirmation Hearing" shall mean the date that the hearing on the confirmation of the Plan is completed.

2.10     "Court" shall mean the United States Bankruptcy Court for the Northern District of Alabama and the Judge assigned to this Case.

2.11     "Creditor" shall have the meaning defined in § 101(10) of the Code.

2.12     "Date of Filing" shall mean June 2, 2024.

2.13     "Debt" shall have the meaning defined in § 101(12) of the Code.

2.14     "Debtor" shall mean Pegrum Creek, LLC with the status of and rights conferred to Debtor by § 1107 of the Code.

2.15    "Effective Date of the Plan" shall mean the later of (i) the first business day of the second full month following the Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable; provided, the Debtor may at any time designate an earlier Effective Date of the Plan by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

2.16    "Interests" shall mean the membership interests held by the William E. Taylor, Jr. in the Debtor.

2.17    "Pegrum" shall mean Pegrum Creek, LLC.

2.18    "Personal Property Assets" shall mean all personal property of the Debtor, including but not limited to vehicles, equipment, and machinery.

2.19    "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

2.20    "Property" shall mean all assets in which the Debtor has an interest as of the Effective Date of the Plan, plus, unless otherwise stated herein, assets acquired after the Date of Filing.

2.21    "Real Estate Assets" shall mean the parcels of real estate owned in the name of the Debtor, and the Debtor's interest in real estate, and disclosed in the Debtor's Schedules of Assets and Liabilities.

2.22    "Reorganized Debtor" shall mean the Debtor after Confirmation.

2.23    "Secured Claim" shall mean an Allowed Claim that is allowed as a secured claim pursuant to § 506(a), including a Real Property Secured Claim and a Vehicle and Equipment Secured Claim.  If a value fixed by this Plan is not approved by the Court at Confirmation, the Plan will apply the value determined by the Court to be appropriate.

2.24    "Value of the Property" shall mean the proceeds resulting from the sale of assets pursuant to the Plan, less costs of sale, Ad Valorum Taxes, and superior liens.

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND INTERESTS

3.01    Class 1. Allowed Secured Claims of Bank of Frankewing that are not otherwise included in another Class herein.

3.02    Class 2.  Allowed Secured Claims of First Bank that are not otherwise included in another Class herein.

3

3.03     Class 3. Allowed Secured Claims of Colleen Wood that are not otherwise included in another Class herein.

3.04     Class 4.  Allowed Secured Claims of Paul Bradley Chambliss that are nor otherwise included in another Class herein.

3.05     Class 5.  Allowed Unsecured Claims that are not otherwise included in another Class herein.

3.06     Class 6.  The Interest of William E. Taylor, Jr. in the Debtor.

**ARTICLE IV**
**TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS**
**AND BANKRUPTCY ADMINISTRATOR FEES**

4.01     Unclassified Claims.  Pursuant to § 1123(a)(1), administrative expense claims allowed under § 507(a)(2) and unsecured priority tax claims under § 507(a)(8) are not in a class.

4.02     Administrative Expense Claims.  Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full at the later of (i) the time that the expense has been approved by the Court, (ii) upon such other terms as may be agreed upon by the holder of the claim and the Debtor, or (iii) the Effective Date of the Plan.

4.03     Priority Tax Claims.  Priority tax claims allowed under § 507(a)(8) shall be paid in full within 180 days of the Effective Date of the Plan, with interest in arrears accruing at 4.75% per annum.  No penalties that accrue after the Date of Filing will be allowed.  All such tax claims that are incurred after Confirmation shall be payable when due.

4.04     Madison County, Alabama Ad Valorum Taxes.  The Madison County, Alabama ("Madison County") tax claims shall be paid as Property is sold during the Plan, with such taxes being paid from initial gross proceeds of such sale.  These taxes shall be paid by the closing agent at or immediately after closing.  In no event shall any such taxes due be left unpaid two (2) years from confirmation, as is permitted by Sec. 1129(a)(9)(D), as prescribed in subparagraph (C).  In addition, Madison County's Secured Claim for unpaid 2024 Ad Valorem Property Taxes includes the following three parcels that were previously sold during the pendency of this Bankruptcy proceeding for which the 2024 property taxes remain unpaid: PIN 69972 (Joe Quick Road); PIN 124075 (131 Tanner Road); and PIN 153663 (1966 Walker Lane). The unpaid 2024 Ad Valorem Property Taxes for PIN 69972; PIN 124075; and PIN 153663 shall also be paid from the proceeds of the sale of Property sold during the administration of the Plan.  The taxes will be paid within forty-five (45) days from the date of confirmation.

4

4.05 <u>Bankruptcy Administrator Fees.</u> All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("<u>Bankruptcy Administrator Fees</u>") will accrue and be timely paid until the Case is closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court. Additionally, any outstanding Bankruptcy Administrator Fees required to be paid by statute shall be paid current as of the Effective Date of the Plan.

## ARTICLE V
## <u>TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN</u>

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1 – Bank of Frankewing | Impaired | Bank of Frankewing holds a lien on a certificate of deposit in the name of the Debtor, which shall be automatically surrendered to Bank of Frankewing upon confirmation. The automatic stay, if any, shall be lifted upon confirmation in order to permit the proceeds from the referenced certificate of deposit to be applied to the Class 1 Allowed Secured Claim(s). All Allowed Class 1 Secured Claims shall be paid upon the surrender of the referenced certificate of deposit and/or the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor. All secured creditors will retain their liens as they existed on the Date of Filing, in the same priority existing at the Date of Filing to secure their Allowed Secured Claims.<br><br>The liens securing Allowed Secured Claims shall attach to the proceeds of each sale of collateral. Liens on Real Estate Assets and other assets secured by mortgages, deeds of trust, possession of collateral, or other means are perfected under state law.<br><br>Class 1 Claimant shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 1 Claims. If Bank of Frankewing objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 1 Secured Claim would be fully satisfied by the sale. If no objection is made in writing within twenty (20) days of the notice of sale, all Class 1 Claims shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments.<br><br>Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 1 Claim. The surrender of the certificate of deposit referenced herein to Bank of Frankewing shall serve as adequate protection to Bank of Frankewing. Any terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan. |

Case 24-81037-CRJ11   Doc 361   Filed 01/26/26   Entered 01/26/26 10:50:29   Desc Main Document      Page 5 of 15

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| | | The sale currently approved will not be paid in full to Class 2, but rather will be paid to superior priority claims of Classes 1 and 2 accordingly. |
| Class 2 – First Bank Secured Claims | Impaired | All Allowed Class 2 Secured Claims shall be paid upon the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor. All secured creditors will retain their liens as they existed on the Date of Filing, in the same priority existing at the Date of Filing to secure their Allowed Secured Claims pursuant to the deeds of trust and UCC filings evidencing those liens. The liens securing Allowed Secured Claims shall attach to the proceeds of each sale of collateral. The collateral documents evidencing all existing liens will remain unaffected hereunder except to the extent inconsistent with the terms of the Plan. The Debtor's Plan shall not automatically void liens absent future claims objections or motions to avoid liens.<br><br>The "Value of the Property" to be paid to the First Bank shall be the net proceeds from a fair market sale of property sold pursuant to the Plan which is either unobjected to or approved by the Court over objection. Net proceeds shall be the sales price of the property less costs of sale, Ad Valorum Taxes, and liens having priority over the liens of the First Bank. The Allowed Secured Claims shall be entitled to accrue interest, attorney's fees and costs beyond the Effective Date and through the closing of the Bankruptcy Case. To the extent such Allowed Secured Claims are oversecured, the secured creditor shall be entitled to recover post-petition attorney's fees.<br><br>Class 2 Claimant shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 2 Claims. If First Bank objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 2 Secured Claim would be fully satisfied by the sale. If no objection is made in writing within twenty (20) days of the notice of sale, all Class 2 Claims shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments; however, all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class 2 Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale.<br><br>Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 2 Claim. Any terms of the existing notes, |

Case 24-81037-CRJ11    Doc 361    Filed 01/26/26    Entered 01/26/26 10:50:29    Desc
Main Document      Page 6 of 15

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| | | deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.<br><br>Class 2 Claimant shall have automatic stay relief to foreclose on any collateral secured by its liens if the following payment milestones are not met by the Debtor and/or related individuals or entities either jointly owning collateral with the Debtor, or jointly and severally owning and paying claims to Claimant:<br><br>Milestone 1<br>Payment to First Bank: $6.315 million<br>Timing: By June 1, 2026<br>Assumptions: From sales of Joe Quick / 396 Billy D Harbin and 1375 Walker Road part of Northaven Contract involving additional parcel; court approval required. The Northaven Contract sale currently approved will not be paid in full to Class 2, but rather will be paid to superior priority claims of Classes 1 and 2 accordingly.<br><br>Milestone 2<br>Payment to First Bank: $3 million<br>Timing: August 31, 2026<br>Assumptions: Based on remaining projected land sales.<br><br>Should any of these payment milestones not be met by the Debtor, any Class 2 Claimant may file a notice with the Court indicating that it has chosen to exercise its right to foreclose on its collateral; no other motion, order, or notice shall be required. The Debtor's rights to employ an auctioneer under Article 8.01(c) does not impede with Class 2 Claimant's rights to exercise its right to foreclose should any of the payment milestones not be met by the Debtor.<br><br>The Debtor hereby acknowledge the validity of all Class 2 Claims in the full amounts indicated on the Class 2 Claimant's proofs of claim. The Debtor further acknowledges the validity of the liens asserted in connection with all Class 2 Claims. |
| Class 3 – Colleen Wood Secured Claim | Impaired | All Allowed Class 3 Secured Claims shall be paid upon the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor. Class 3 Secured Claims are secured by the following Real Estate Assets:<br><br>| Parcel As Identified in Disclosure Statement | Parcel as Listed in Wood & Chambless Mortgages | Parcel Tax ID Number |<br>|---|---|---|<br>| 0 Billy D. Harbin Rd. (52 acres) | Tract 1 | 03-05-22-0-000-045.003 | |

Case 24-81037-CRJ11    Doc 361    Filed 01/26/26    Entered 01/26/26 10:50:29    Desc
Main Document    Page 7 of 15

| CLASS | IMPAIRMENT | TREATMENT | | |
|---|---|---|---|---|
| | | 0 Billy D. Harbin Rd. (1.2 acres) | Tract 2 | 03-05-22-0-000-045.005 |
| | | 0 Billy D. Harbin Rd. (0.9 acres) | Tract 3 | 03-05-22-0-000-045.006 |
| | | 0 Joe Quick Road (77 acres) | Tract 4 | 03-05-21-0-000-037.000 |
| | | 0 Walker Lane (36 acres) | Tract 5 | 03-08-33-0-000-007.000 |
| | | 1375 Walker Lane (96 acres) | Tract 6 | 03-08-28-0-000-046.000 |

The collateral documents evidencing all existing liens will remain unaffected hereunder except to the extent inconsistent with the terms of the Plan.

Colleen Wood shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 3 Claims. If Colleen Wood objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 3 Secured Claim would be fully satisfied by the sale. If no objection is made in writing within twenty (20) days of the notice of sale, Colleen Wood shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments; however, all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class 3 Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale.

Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 3 Claim. Any terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

**Class 4 – Paul Bradley Chambliss Secured Claim** — Impaired

All Allowed Class 4 Secured Claims shall be paid upon the sale of the Real Estate Assets, unless other treatment is agreed to in writing by the secured creditor. Class 4 Secured Claims are secured by the following Real Estate Assets:

| Parcel As Identified in Disclosure Statement | Parcel as Listed in Wood & Chambless Mortgages | Parcel Tax ID Number |
|---|---|---|
| 0 Billy D. Harbin Rd. (52 acres) | Tract 1 | 03-05-22-0-000-045.003 |

8

| CLASS | IMPAIRMENT | TREATMENT | | |
|---|---|---|---|---|
| | | 0 Billy D. Harbin Rd. (1.2 acres) | Tract 2 | 03-05-22-0-000-045.005 |
| | | 0 Billy D. Harbin Rd. (0.9 acres) | Tract 3 | 03-05-22-0-000-045.006 |
| | | 0 Joe Quick Road (77 acres) | Tract 4 | 03-05-21-0-000-037.000 |
| | | 0 Walker Lane (36 acres) | Tract 5 | 03-08-33-0-000-007.000 |
| | | 1375 Walker Lane (96 acres) | Tract 6 | 03-08-28-0-000-046.000 |

The collateral documents evidencing all existing liens will remain unaffected hereunder except to the extent inconsistent with the terms of the Plan.

Paul Bradley Chambliss shall be given twenty (20) days' advance notice of the sale of any Real Estate Assets subject to liens associated with Class 4 Claims. If Paul Bradley Chambliss objects to any such sale during this twenty (20) day period, then the Debtor may not sell those Real Estate Assets unless the Class 4 Secured Claim would be fully satisfied by the sale. If no objection is made in writing within twenty (20) days of the notice of sale, Paul Bradley Chambliss shall be deemed to have consented to the sale of the Real Estate Assets by the Debtor free and clear of all liens, pursuant to 11 U.S.C. § 363(f)(2), attached to the respective Real Estate Assets regardless of whether sufficient funds exist from any particular sale of Real Estate Assets to pay all liens associated with that particular property sale. Following a particular sale of Real Estate Assets, the Debtor shall pay the net proceeds of the sale (after payment of all costs of sale) to secured lien creditors in priority order of their recorded liens/judgments; however, all liens/judgments shall be released on the sold Real Estate Assets regardless of whether the Class 4 Secured Claim was paid in full, paid a partial distribution, or paid no distribution from the sale.

Any pending adequate protection payments will continue to accrue until the full satisfaction of the respective Class 4 Claim. Any terms of the existing notes, deeds of trust, or security agreements which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 5 – Allowed Unsecured Claims | Impaired | Class 5 shall consist of all Allowed Unsecured Claims that are not otherwise included in another Class herein. These Allowed Claims shall be paid in full of Class 5 Claims, with other Allowed Claims in this Class upon the sale of the Real Estate Assets, Personal Property Assets, including sale of net operating losses and net proceeds of claims liquidation. No interest will accrue on these Allowed Claims.<br><br>In the event there is not sufficient net proceeds from the sale of Real Estate Assets and Personal Property Assets, including tax credits and claims proceeds to pay Allowed Unsecured Claims, in full, such claims will be paid pro rata. |

9

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 6 – Interest | Impaired | Class 6 consists of the membership interests in the Debtor, owned by William E. Taylor, Jr.  This interest may retain interest in assets not liquidated, or net proceeds from liquidation, only if all Allowed Claims, including, but not limited to Allowed Unsecured Claims are paid in full. |

## ARTICLE VI
## PAYMENT OF ALLOWED CLAIMS

6.01    Distribution on Allowed Claims.  Distributions hereunder will be made only on Allowed Claims.

6.02    Early Payment.  Nothing herein shall prohibit the Debtor from making an early payment of an Allowed Secured Claim, provided the funds used to pay that Claim will not cause a reduction of the distributions to the Allowed Unsecured Claims either in timing or amount.

6.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

6.04    Determination of Interest Rate.  If any interest rate fixed under this Plan is not approved by the Court, the applicable rate under the Plan shall be the rate determined to be allowable by the Court.

6.05    Discharge of Debts and Discharge Injunction.  For the purposes of 11 U.S.C. § 1141(d)(5), the Debtor will have completed its obligations under the Plan if it is not in default under the Plan as of the earlier of (1) the date of the final payment to the Class 5 Claims, or (2) the sale of all Real Estate Assets and Personal Property Assets.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    Rejected Executory Contracts and Unexpired Leases.  All executory contracts and unexpired leases that either have not been assumed by Court order prior to the Effective Date of the Plan or are subject to a motion filed by the Debtor to assume such agreement prior to the Effective Date of the Plan shall be deemed rejected.  The Confirmation of the Plan shall be deemed to cure any pre-existing default under an assumed agreement.  Any party damaged by the rejection of an executory contract or unexpired lease shall be entitled to a Class 5 General Unsecured Claim.

10

8.01    Funding for the Plan.  The Plan will be funded by the following:

(a) The Debtor will continue funding the Plan through the sale of Real Estate Assets until the earlier of (a) sufficient funds has been raised to pay all claims in full or (b) such Real Estate Assets have been liquidated;

(b) The Debtor will market and sell, by means to be determined by the Debtor in its exclusive business judgment, Real Estate Assets sufficient to pay all Allowed Administrative Claims, Allowed Priority Claims, Allowed Secured Claims, and all other Allowed Claims in full, as provided in this Plan.  The sale of the Real Estate Assets will be completed as soon as practicable, as determined by the Debtor in consultation with respective Secured Creditors.  The Debtor will determine the order and timing of sale of the Real Estate Assets.  All creditors in Classes 1-5 shall retain their rights to credit bid in the sale of any Real Estate Asset encumbered by a property perfected security interest. Once sufficient funds to satisfy all claims have been generated by the sale of Real Estate Assets, the Debtor will cease selling unliquidated Real Estate Assets and the balance of Property (including cash and Real Estate Assets) will be returned to the Debtor as the holder of the only Class 6 Claim;

(c) If all Real Estate Assets have not been liquidated by the first day of the six (6th) month following the Effective Date, or if All Allowed Claims in Classes 1-5 have not been fully satisfied by then, the Debtor, within its sole discretion, shall either employ an auctioneer to auction all remaining Real Estate Assets or grant any remaining creditor in Classes 1-5 relief from the discharge injunction to foreclose on its unsold collateral.  The stay imposed by the Plan shall lift as to Allowed Secured Claims on the expiration of the six-month sale period and the auction period if elected.  The Debtor shall make its election to either auction Real Estate Assets or abandon such assets within fourteen (14) days of the expiration of the six-month sale period. In the event the Debtor chooses to auction the Real Estate Assets, such auction shall take place within sixty (60) days of the expiration of the six-month sale period;

(d) Contemporaneously with the marketing the Real Estate Assets in classically brokered sales, the Debtor, in consultation with the Realtor(s) retained in this case, counsel, related Secured Claimants,  and other interested parties will solicit auctioneer professionals to market and sell by public auction any Real Estate Assets not sold nor contracted to sell by the conclusion of the six-month sale period.  Any Auctioneer hired by the Debtor shall be submitted for Court Approval as a

Case 24-81037-CRJ11    Doc 361    Filed 01/26/26    Entered 01/26/26 10:50:29    Desc
Main Document      Page 11 of 15

Professional. Post-confirmation, bidding procedures shall be submitted for comment and approval by the Court;

(e) The Debtor will market and sell, by means to be determined by the Debtor in its exclusive business judgment, Personal Property Assets sufficient to pay all Allowed Administrative Claims, Allowed Secured Claims, and all other Allowed Claims in full, as provided in this Plan. The sale of the Personal Property Assets will be completed as soon as practicable, as determined by the Debtor. The Debtor will determine the order and timing of sale of the Personal Property Assets. Once sufficient funds to satisfy all Allowed Claims have been generated by the sale of Personal Property Assets, the Debtor will cease selling unliquidated Personal Property Assets and the balance of Property (including cash and Personal Property Assets) will be returned to the Debtor as the holder of the only Class 6 Claim; and

(f) The Debtor will file with the Court an accounting and will seek the entry of a Final Decree as required under Bankruptcy Rule 3022 following the Effective Date of the Plan and the administration of the Estate. During this period the Debtor shall submit reports and pay quarterly fees to the Bankruptcy Administrator as required by law.

8.02    Continuation of Debtor's Business Operations. Until the Case is closed, Debtor will continue to remain in possession of all Property pursuant to § 1108 and shall continue to pay Bankruptcy Administrator fees as required.

8.03    Transfer of Remaining Assets. Remaining Property or excess proceeds from sales will be transferred to William E. Taylor, Jr. upon the satisfaction in full of all Allowed Claims.

8.04    Default Under Plan. Confirmation shall effect a cure of any existing default under a Debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any Allowed Claim after Confirmation shall exist only if the Debtor (i) fails to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the property securing the creditor's Allowed Claim for the value of the property, or (iii) disposes of the Property securing the Allowed Claim, normal wear and tear excepted, without either the consent of the creditor holding the Allowed Claim, the satisfaction of the lien on that Property, or the payment of the net proceeds to that Creditor.

8.05    Notice. Unless otherwise directed by the Debtor in writing, notice of default shall be sufficient if delivered as follows:

> Pegrum Creek, LLC
> c/o William Edwin Taylor, Jr.
> 188 Tanner Road
> New Market, AL 35761

12

With copy to:

Stuart M. Maples
Thompson Burton, PLLC
Regions Center
200 Clinton Ave. West, Suite 1000
Huntsville, AL 35801
smaples@thompsonburton.com

Phillip Young
Thompson Burton, PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
phillip@thompsonbuton.com
*Admitted Pro hac vice*

## ARTICLE IX
## GENERAL PROVISIONS

9.01    <u>Withdrawal of Plan.</u>  At the option of the Debtor, this Plan may be withdrawn at any time prior to Confirmation.  Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, interest holders and persons specially requesting all notices in this Case.

9.02    <u>Retention of Claims.</u>  Pursuant to § 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

9.03    <u>Exemptions from Transfer Tax.</u>  The issuance, transfer or exchange of a security, or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any Property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Code.

9.04    <u>Modification of the Plan.</u>  The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court.  After Confirmation, the Debtor, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan.  The foregoing provisions of this paragraph do not limit the ability of any party to modify the Plan under § 1127 and applicable rules.

9.05    <u>Closing of Case.</u>  After the Effective Date of the Plan, upon the payment of Allowed Administrative Claims and the payment of all Allowed Claims, the estate will be deemed to be fully administered, and the Debtor may close the Case upon the filing of a final accounting and a motion for a final decree as required under Bankruptcy Rule 3022.

9.06    <u>Continuing Jurisdiction of the Court.</u>  Notwithstanding the entry of a final decree, the Court shall retain jurisdiction to the extent allowed by law, which shall include jurisdiction over the following matters:

(a) The determination of such objections as may be filed to claims or interests, and the re-examination of the allowance of any claims or interests;

(b) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

(c) To enforce and interpret the terms and conditions of this Plan, including a determination of value of Property as required under the Plan;

(d) Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and/or the Reorganized Debtor, and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary;

(e) Determination of any claims asserted by the Debtor against any other person or entity, including but not limited to any right of the Debtor to recover assets pursuant to the provisions of Title 11 which are retained pursuant to 9.02 herein; and

(f) Entry of a final decree closing this Case or an order regarding the Debtor's discharge.

9.07    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.08    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.09    Captions.  The headings contained in this Plan are for the convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.10    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Alabama govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

Respectfully submitted,

| | |
|---|---|
| Pegrum Creek, LLC | /s/ *Stuart M. Maples* |
| By:  William Edwin Taylor, Jr. | Stuart M. Maples (abs-1974-s69s) |
| Its:  President | Thompson Burton, PLLC |
| | Clinton Avenue West, Suite 1000 |
| | Huntsville, AL 35801 |
| | 256-489-9779 |
| | smaples@thompsonburton.com |
| | **Counsel for Debtor** |

# CERTIFICATE OF SERVICE

I hereby certify that, on the same day as this filing, I have served a true and correct copy of the **Fourth Amended Chapter 11 Debtor's Plan of Liquidation** on all creditors on the attached mailing matrix and on (i) the Office of the Bankruptcy Administrator, (ii) the Debtor's 20 largest unsecured creditors, (iii) all counsel of record requesting notice, (iv) the Internal Revenue Service, (v) all secured creditors, (vi) any governmental agencies that request special notice, and (vii) all other persons requesting notice, by depositing the same in the United States Mail, postage prepaid and properly-addressed, via electronic mail at the previously-provided e-mail address, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures.

/s/ *Stuart M. Maples*
Stuart M. Maples